IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

RAYNARD HEAGGANS                                                                PLAINTIFF

v.                                          No. 4:15CV00400 JLH

ARKANSAS STATE HIGHWAY
AND TRANSPORTATION DEPARTMENT                                    DEFENDANT

**OPINION AND ORDER**

    Raynard Heaggans commenced this employment discrimination action against the Arkansas State Highway and Transportation Department alleging race discrimination claims under Title VII and 42 U.S.C. § 1983. Heaggans works in the Environmental division of the Department and says that he was passed over for six different promotions because he is black. The Department has filed a motion for summary judgment. Document #16. For the following reasons, the motion is granted.

**I.**

    A court should grant summary judgment if the evidence demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets that burden, the nonmoving party must come forward with specific facts that establish a genuine dispute of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). A genuine dispute of material fact exists only if the evidence is sufficient to allow a reasonable jury to return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The Court must view the evidence in the light most favorable

to the nonmoving party and must give that party the benefit of all reasonable inferences that can be drawn from the record. *Pedersen v. Bio-Med. Applications of Minn.*, 775 F.3d 1049, 1053 (8th Cir. 2015). If the nonmoving party fails to present evidence sufficient to establish an essential element of a claim on which that party bears the burden of proof, then the moving party is entitled to judgment as a matter of law. *Id.*

## II.

The following facts are undisputed. The Department is the state agency responsible for the maintenance, repair, and safety of Arkansas highways. It is divided into several divisions. Heaggans works in the Environmental division, which is responsible for compliance with environmental laws, regulations, and policies throughout the planning, construction, and operation of roadways and other infrastructure. The Environmental division is further divided into six sections: Assessments, Cultural Resources, Geographic Information Systems, National Pollutant Discharge Elimination System (NPDES), Public Involvement, and Special Studies. These sections evaluate potential impacts on, among other things, endangered species, hazardous waste, water quality, and wetlands. Heaggans has worked at the Department since 2005, starting in the Human Resources division. He worked part-time or seasonally from 2005 through 2010. Heaggans graduated from the University of Central Arkansas in May 2010 with a bachelors degree in environmental science. In February 2011, Heaggans became a full-time employee in the Environmental division and was shortly thereafter promoted to Environmental Field Technician II upon the recommendation of his then-direct supervisor and now-Environmental division head, John Fleming.

Fleming asked Heaggans if he wanted to be placed on the "job list" to gain experience performing the duties of an environmental analyst, and Heaggans said that he did. Each section of the Environmental division has environmental analysts. The job list organizes the duties associated with upcoming construction projects and to whom those duties are assigned. Duties assigned to Heaggans pursuant to the job list included securing wetlands permits and visiting job sites.[1] At the same time, Heaggans performed his field tech duties. A field tech's official duties include assisting the division with the collection of information for environmental and mitigation documents.[2] Heaggans also attended a week-long training session about wetlands, for which he received a certification. He performed his duties adequately and received positive feedback from Fleming, as recently as May 2014. Document #16-1 at 20.

Since his promotion in February 2011, Heaggans has sought and has been denied six other promotions to positions in three different sections within the Environmental division: (1) Environmental Analyst 1 (Special Studies), February 2012; (2) Environmental Analyst 1 (NPDES), March 2012; (3) Beautification Coordinator 1, July 2012; (4) Environmental Analyst 1 (NPDES), September 2012; (5) Environmental Analyst 1 (Special Studies), December 2013; and (6) Environmental Analyst 1 (Special Studies), July 2014. The Department hired white individuals to fill each position.

---

[1]The parties dispute the extent to which Heaggans took on the duties of an environmental analyst. The Department maintains that Heaggans merely assisted more experienced employees while Heaggans says that he performed virtually the same type of duties as an environmental analyst.

[2]Heaggans's characterization is that a field tech "pretty much" just waters the trees in the nursery, maintains the trucks, hires tree-planting contractors, and assists the environmental analysts. Document #28 at 5.

**III.**

Under Title VII, before filing a lawsuit in federal court, aggrieved individuals must "(1) timely file a charge of discrimination with the EEOC setting forth the facts and nature of the charge and (2) receive notice of the right to sue." *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir. 1994) (citing 42 U.S.C. § 2000e-5(b), (c), (e)). A claim for employment discrimination is barred if the plaintiff fails to file such a charge. *See Kline v. City of Kansas City, Fire Dept.*, 175 F.3d 660, 664 (8th Cir. 1999). Thus, to assert a claim for failure to promote in violation of Title VII, a plaintiff must first exhaust his administrative remedies. *Williams*, 21 F.3d at 222. "Exhaustion of administrative remedies is central to Title VII's statutory scheme because it provides the EEOC the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts." *Id*.

Heaggans filed a charge of discrimination with the EEOC on September 17, 2014. Document #1 at 12. He checked the box for discrimination based on race and explained that in February 2014,[3] he applied for an environmental analyst position, was interviewed, and was not selected. *Id*. Then, in June 2014, he applied for an environmental analyst position and did not even receive an interview. *Id*. Heaggans stated: "I believe I was not promoted because of my race, black, in violation of Title VII of the Civil Rights Act of 1964, as amended." *Id*. He also stated that the discrimination took place at the earliest on February 1, 2014 and at the latest on June 9, 2014. *Id*. Heaggans only identified two failures to promote; he did not identify as a basis for his charge the failures that he now alleges occurred in February, March, July, and September 2012. Therefore, any

---

[3]This actually happened in December 2013, but Heaggans did not discover that Ewing had been selected instead of him until February 2014. Document #16-5 at 22.

claims based on those occasions are barred because Heaggans failed to exhaust his administrative remedies. *See Robinson v. Am. Red Cross*, 753 F.3d 749, 757 (8th Cir. 2014); *Ross v. City of Independence, Mo.*, 76 F. App'x 108, 109 (8th Cir. 2003) ("Each decision not to promote [plaintiff] was a discrete event.") (citing *Dorsey v. Pinnacle Auto. Co.*, 278 F.3d 830, 838 (8th Cir. 2002)).

Title VII's enforcement provisions also require that a charge be filed with the EEOC within 180 days after the alleged unlawful employment action occurred. 42 U.S.C. § 2000e-5(e)(1). "[E]ach [discrete discriminatory act] starts a new clock for purposes of filing charges related to that act, and an employee must file charges within 180 or 300 days (whichever is applicable) of a discrete discriminatory action." *Tademe v. Saint Cloud State Univ.*, 328 F.3d 982, 987-88 (8th Cir. 2003). Again, Heaggans alleges that in February 2014, he applied for an environmental analyst position and was not selected because of his race. Document #1 at 12. The Department actually filled the position in December 2013. Document #16-5 at 22. But either way, more than 180 days passed between the alleged unlawful employment action and the charge. Because Heaggans failed to file a charge with the EEOC within 180 days after he was passed over for the 2013 promotion, any claim based on that action is time-barred. In fact, each of the claims that Heaggans failed to properly exhaust also fall outside the 180-day window. The only failure to promote actionable under Title VII is the July 2014 selection of Benjamin Thesing to fill the position of Environmental Analyst 1 (Special Studies) instead of Heaggans.

**IV.**

Though 42 U.S.C. 1983 provides a federal cause of action, this Court looks to Arkansas law to determine the applicable statute of limitations. *Wallace v. Kato*, 549 U.S. 384, 387, 127 S. Ct. 1091, 1094, 166 L.Ed.2d 973 (2007). The statute of limitations for personal injury actions applies,

5

which is three years. *Miller v. Norris*, 247 F.3d 736, 739 (8th Cir. 2001) (citing Ark. Code Ann. § 16-56-105(3)). Heaggans commenced this action on July 1, 2015. Document #1. Therefore, any claim based on a failure to promote prior to July 1, 2012 is time-barred. The failures Heaggans alleges occurred in February 2012 and March 2012 are not actionable. The failures to promote actionable under section 1983 are the July 2012 selection of Sam Sawyer to fill the position of Beautification Coordinator 1, the September 2012 selection of Lindsay Zweifel to fill the position of Environmental Analyst 1 (NPDES), the December 2013 selection of Katyi Ewing to fill the position of Environmental Analyst 1 (Special Studies), and the July 2014 selection of Benjamin Thesing to fill the position of Environmental Analyst 1 (Special Studies).

## V.

Courts have held that the Equal Protection Clause of the Fourteenth Amendment confers on an individual a right to be free of race and sex discrimination in public employment. *Henley v. Brown*, 686 F.3d 634, 642 (8th Cir. 2012); *Tipler v. Douglas Cnty. Neb.*, 482 F.3d 1023, 1027 (8th Cir. 2007). Such a claim may be asserted under 42 U.S.C. § 1983. *Brown*, 686 F.3d at 642-43. The Eighth Circuit "has held that a § 1983 claim based on alleged violation of equal protection in the employment context is analyzed in the same way as a Title VII claim of sex, race, or religious discrimination." *Mummelthie v. City of Mason City, Ia.*, 873 F. Supp. 1293, 1333 (N.D. Iowa 1995) *aff'd* 78 F.3d 589 (8th Cir. 1996). Therefore, to avoid summary judgment on his failure to promote claims, Heaggans must either produce direct evidence of discrimination or generate a genuine dispute of material fact for trial under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). *Floyd-Gimon v. Univ. of Ark. for Med. Sci.*, 716 F.3d 1141, 1149 (8th Cir. 2013).

6

Heaggans has not produced direct evidence of discrimination. Therefore, he must first present a prima facie case of intentional discrimination. *McDonnell Douglas*, 411 U.S. at 802-03, 93 S. Ct. at 1824. The burden then shifts to the Department to proffer a legitimate, nondiscriminatory reason for the actions taken. *Id*. If the Department meets that burden, which is "minimal," the burden shifts back to Heaggans to show that the proffered nondiscriminatory reason is merely pretext for unlawful discrimination. *Id*.; *see also Cody v. Prairie Ethanol, LLC*, 763 F.3d 992, 996 (8th Cir. 2014) (applying *McDonnell Douglas* burden-shifting framework).

To establish a prima facie case of race discrimination in a failure to promote claim, Heaggans must show that: (1) he is a member of a protected group; (2) he was qualified and applied for a promotion to an available position; (3) he was rejected; and (4) similarly situated employees, not part of the protected group, were promoted instead. *Jackson v. United Parcel Serv., Inc.*, 643 F.3d 1081, 1086 (8th Cir. 2011). Although the Department does not concede that Heaggans has established a prima facie case, it principally argues that it has proffered a legitimate, nondiscriminatory reason for failing to promote Heaggans—the selected candidates were more qualified—and that Heaggans has failed to demonstrate pretext. Document #17 at 22-42. This reason meets the Department's minimal burden to proffer a nondiscriminatory justification. Because the Court agrees that Heaggans cannot rebut the Department's reason, the Court presumes without deciding that Heaggans has established a prima facie case. *See Tusing v. Des Moines Indep. Cnty. Sch. Dist.*, 639 F.3d 507, 515 (8th Cir. 2011).

Heaggans's "burden to show pretext 'merges with the ultimate burden of persuading the court that [he was] the victim of intentional discrimination.'" *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 792 (8th Cir. 2011) (alternation in original) (quoting *Torgerson v. City of*

7

*Rochester*, 643 F.3d 1031, 1046 (8th Cir. 2011) (en banc)). An "employee may demonstrate pretext either by showing 'that the employer's explanation is unworthy of credence because it has no basis in fact' or 'by persuading the court that a prohibited reason more likely motivated the employer.'" *Cox v. First Nat'l Bank*, 792 F.3d 936, 939 (8th Cir. 2015) (quoting *Torgerson*, 643 F.3d at 1047); *see also Loeb v. Best Buy Co.*, 537 F.3d 867, 873 (8th Cir. 2008).

In the failure to promote context, the Court recognizes that employers routinely select the best qualified candidate. *See Cox*, 792 F.3d at 939. If the employee can show that the employer selected a candidate with objectively inferior qualifications, the Court may reasonably infer that the promotion was based on something other than the comparative qualifications of the candidates. *Barber*, 656 F.3d at 793. The Eighth Circuit explained:

> "To support a finding of pretext, the applicant must show that [the employer] hired a *less* qualified applicant." *Torgerson*, 643 F.3d at 1049 (brackets omitted). "If the comparison reveals that the plaintiff was only similarly qualified or not as qualified as the selected candidate, then no inference of discrimination would arise." *Id*. (ellipsis omitted). "Although an employer's selection of a less qualified candidate can support a finding that the employer's nondiscriminatory reason for the hiring was pretextual, it is the employer's role to identify those strengths that constitute the best qualified applicant." *Gilbert v. Des Moines Area Cmty. Coll.*, 495 F.3d 906, 916 (8th Cir. 2007).

*Id*. (alteration in original). Therefore, Heaggans must show that the Department hired a *less* qualified applicant. Heaggans argues that the Department's proffered reason is pretextual because it "could have and should have chosen" him for the positions advertised. Document #29 at 26 (relying on testimony from fellow employees stating that Heaggans performed environmental analyst work, was "qualified" for the positions he sought, and did a "reasonable job" obtaining permits). But he has failed to demonstrate that any of the selected candidates were "less qualified" than him for the positions for which they were hired.

8

**A.     Sam Sawyer**

Heaggans applied for the position of Beautification Coordinator 1 in April 2012, and the application process continued into July 2012. Document #16-3 at 6. A Beautification Coordinator assisted in the enforcement of the Highway Beautification Act and implementation of signing programs. Document #16-5 at 31. Beautification is no longer a section of the Environmental division, but at the time it was responsible for billboard control, junkyard control, logo signing, tourist information signing, and maintaining the vegetation around billboards. Document #16-3 at 1, ¶3. The job specifications for Beautification Coordinator 1 included the ability to interpret and apply federal, state, and local regulations. Document #16-5 at 31.

Applicants were required to compose a memorandum based on a hypothetical situation and to participate in an oral interview with Jeff Ingram, the Beautification section head. Document #16-3 at 6. Ingram interviewed 8 of 203 applicants. *Id.* While Heaggans had more than two-years experience working in the Special Studies section of the Environmental division, Sawyer had worked for the Arkansas Department of Environmental Quality for over 22 years, and at the time he applied for the Beautification Coordinator 1 position, he supervised five employees. *Id.* at 7. Significantly, he was familiar with a system similar to one used at the Department for billboard permitting. *Id.* Ingram evaluated the applicants on several criteria, scoring them for experience in different areas. Heaggans received a score of 11 while Sawyer received a score of 26. In making his recommendation to hire Sawyer, Ingram relied in part on Sawyer's experience, stating: "He was the only applicant with any experience in permit or code enforcement type work." Document #16-3 at 8. Because the job specifications make clear that the ability to interpret and apply federal, state, and local regulations was integral to performing the job and because Sawyer was the only

9

interviewee with such experience, the Court cannot say that Sawyer was less qualified for the position than Heaggans. There is no basis for the Court to infer that the Department's proffered reason was pretext and that Heaggans was not selected because of his race.

**B.     Lindsay Zweifel**

Heaggans applied for the position of Environmental Analyst 1 (NPDES) in August 2012 and the selection process continued in September 2012. Document #16-2 at 21. An Environmental Analyst 1 researches, interprets, and assists in the implementation of environmental laws, regulations, and permits for highway construction, maintenance, and operation. Document #16-5 at 30. The NPDES section of the Environmental division is responsible for ensuring that the Department is complying with federal regulations promulgated by the Environmental Protection Agency, in part by acquiring the requisite permits. Document #16-2 at 1, ¶2. The job specifications for an Environmental Analyst 1 in August 2012, preferred a candidate to have working knowledge of the NPDES regulations and program. Document #16-5 at 6, 30.

Applicants were required to take a written test, submit a writing sample, and participate in an oral interview with Gary Williamson, the NPDES Section Head. *Id*. at 12. Williamson interviewed 7 of 106 applicants. Document #16-2 at 1, ¶4. Heaggans scored a 74 percent on the written test and received a positive recommendation from Fleming, but he did not have any experience working with the NPDES. *Id*. at 12. Zweifel scored an 87 percent on the written test, and she had four years of experience working as an NPDES water inspector, *Id*. at 14. In making his recommendation to hire Zweifel, Williamson relied on this experience, stating: "Her four years experience as an NPDES Water Inspector where she regularly performed storm water inspections on construction sites will allow her to provide guidance to Department personnel with very little

10

training." *Id*. Because the job specifications for the position make clear that NPDES experience was preferred and because Zweifel had significantly more NPDES experience than Heaggans, the Court cannot say that she was less qualified than Heaggans. There is no basis for the Court to infer that the Department's proffered reason was pretext and Heaggans was not selected because of his race.

**C.     Katyi Ewing**

Heaggans applied for the position of Environmental Analyst 1 (Special Studies) in November 2013, and the selection process continued into December 2013. Document #16-1 at 7, ¶23. The Special Studies section of the Environmental division has two primary responsibilities: (1) ensuring compliance with Section 404 of the Clean Water Act, which concerns jurisdictional wetlands, and (2) protecting endangered animal and plant species and aquatic habitats. *Id*. at 2, ¶4. Environmental science is an important aspect of these responsibilities. *See id*. The position for which Heaggans applied in November 2013 focused on botany. Document #28-1 at 20. The job specifications for an Environmental Analyst 1 (Botanist-Special Studies) in November 2013 provide that a master's degree in botany or plant ecology was preferred and that experience with plant data collection and ability to identify Arkansas plants in the field was required. Document #16-5 at 33.

Applicants were required to take a plant recognition quiz and plant key identification test, write a synopsis of their master's thesis or a senior class project, and participate in an oral interview with Fleming, the Special Studies section head. Document #16-1 at 25. Fleming interviewed one in-house applicant—Heaggans—and three outside applicants. *Id*. Heaggans and one other interviewee failed to show they could adequately recognize and identify plants in the field. *Id*. at 25. Ewing, however, had a bachelors of science in botany and a masters in geography, with her

11

master's thesis focusing on wetland plant communities. *Id*. at 26, 29. Heaggans argues that the Department cannot insist that Ewing was the most qualified candidate because her experience working in botany "was working on a temporary basis as a 'research fellow' working on a 'statewide plant survey landcover map.'" Document #29 at 31. But this is more experience than Heaggans. And Ewing outscored Heaggans on the plant quiz and test. Document #16-1 at 26. In making his recommendation to hire Ewing, Fleming relied in part on her knowledge of and experience with plants, stating: "Ewing appears to have the most skills related to and useful in this position, having a great educational background and related work experience in botany." *Id*. Because the job specifications for the position make clear that some level of expertise in botany was not only preferred but required, and because Heaggans performed poorly on the plant evaluations while Ewing performed well and had an extensive educational background in botany, the Court cannot say that Ewing was less qualified than Heaggans. There is no basis for the Court to infer that the Department's proffered reason was pretext and that Heaggans was not selected because of his race.

**D.     Benjamin Thesing**

Heaggans applied for the position of Environmental Analyst 1 (Special Studies) in May 2014. Document #16-1 at 11, ¶35. The position was the same one awarded to Herzog over Heaggans in February 2012. *Id*. at 10, ¶34. The job classification specifications, however, were updated in April 2014. Document #16-5 at 49. The updating process began as early as October 2013, when the personnel staff coordinator sent a memo to the equal employment opportunity coordinator asking her to review the new specifications for any barriers and to grant her approval. *Id*. at 16. The last time the specifications had been updated was November 2011, shortly before Herzog was hired. *Id*. at 24. The following requirements were added to the job specifications in

12

2011: (1) either a master's degree in pure, applied, or social science or two years experience in environmental analysis; (2) the preference that applicants have a master's degree in biology, zoology, or ecology; (3) experience identifying Arkansas freshwater mussels, fishes, and macroinvertebrates; (4) the preference that applicants have experience writing and developing biological assessments for threatened and endangered species; and (5) the preference for dive certification and blackwater diving experience. *Id*. The following requirements were removed from the job specifications in April 2014: (1) Experience with sampling protocols and ability to identifying living Arkansas freshwater mussels; (2) The preference that applicants have experience with "blackwater" diving in large, deep rivers utilizing Hookah dive equipment. *Id*. at 49. The amended April 2014 job specifications only required experience with sampling protocols and ability to identify any living freshwater mussels and preferred general dive certification. *Id*. No requirements were added. *Id*.

Fleming did not select Heaggans for an interview because he believed that Heaggans was not minimally qualified for the position. Document #16-1 at 11, ¶36. Heaggans did not have two years experience in environmental analysis, was not experienced in the identification of freshwater mussels, and was not dive certified. *Id*. Heaggans says that the Department "added" the dive certification and master's degree preference in 2011 and retained those preferences in 2014 in order to render him ineligible for consideration, and that the additions demonstrate pretext. Document #19 at 10-11, 36-37. But there is no evidence, only bald assertions, that the job specifications were changed in order to exclude Heaggans because he is black. "Absent discrimination, employers are free to exercise their judgment in making personnel decisions." *Barber*, 656 F.3d at 793. This

13

includes updating job requirements to more accurately reflect the type of candidate necessary to adequately perform the tasks and duties assigned to the position.

Although Thesing's qualifications are not as superior to Heaggans's qualifications as the selected candidates for previously discussed analyst positions, he was not less qualified than Heaggans. He has a bachelors of science in geography with a biology minor and a masters of science in biology. Document #16-1 at 32. He worked for the Arkansas Game and Fish Commission as a Stream Team coordinator, spent two years with The Ecological Conservation Organization as a field technician, spent one year as a field ecologist with Equilibrium, and spent two and a half years serving part-time as a teaching and research assistant with the University of Central Arkansas. *Id*. Significantly, Thesing was dive certified and the only applicant who had experience in "blackwater" diving. *Id.* In recommending Thesing, Fleming relied on his dive certification and master's degree. *Id*. There is no basis for the Court to infer that the Department's proffered reason was pretext and that Heaggans was not selected because of his race.

Finally, Heaggans maintains that the Court may infer discrimination from the following facts: (1) Heaggans is the only individual with a college degree to have been hired below a pay grade X; (2) the position of field technician is the lowest-paid position within the Special Studies section and both field technicians are black; (3) Fleming has never promoted a black person to a pay grade X or higher during his time as section head;[4] and (4) Heaggans is the only black person who Fleming has ever interviewed for a pay grade X position.[5] Document #29 at 39. Fleming testified that there

---

[4]Fleming is now the Environmental division head. Document #16-6 at 5. He was Special Studies section head from 2005 to 2014. *Id*. at 6.

[5]The environmental analyst position is a pay grade X position. Document #16-6 at 6.

14

are only two black employees within Special Studies and recognized the lack of racial diversity. Document #16-6 at 13. But a lack of racial diversity within the Special Studies section is not enough to permit a reasonable inference that racial discrimination motivated the decisions not to promote Heaggans. Heaggans was also denied promotions in the Beautification and NPDES sections.

Heaggans has neither provided sufficient evidence to undermine the Department's reasons for selecting other candidates for positions instead of him nor has he come forward with evidence that permits a reasonable inference that the failures to promote him were motivated by racial discrimination. In each instance, the Department selected an applicant that was as qualified or more qualified than Heaggans. No reasonable jury could find pretext or discrimination.

## CONCLUSION

For the foregoing reasons, the Arkansas Highway and Transportation Department's motion for summary judgment is GRANTED. Document #16. This action is dismissed with prejudice.

IT IS SO ORDERED this 6th day of July, 2017.

*J. Leon Holmes*
_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE